**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| TONY HAWK, | ) | |
| | ) | CASE NO.  4:09-cv-02298 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, | ) | MAGISTRATE JUDGE GREG WHITE |
| Commissioner of Social Security | ) | |
| | ) | **MEMORANDUM OPINION & ORDER** |
| Defendant. | ) | |

Plaintiff Tony Hawk[1] ("Hawk") challenges the final decision of the Commissioner of

Social Security, Michael J. Astrue ("Commissioner"), denying his claim for a Period of

Disability ("POD"), Disability Insurance Benefits ("DIB"), and Supplemental Security Income

("SSI") under Title II and Title XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 416(i), 423,

1381 *et seq.*  The Court has jurisdiction pursuant to 42 U.S.C. § 405(g).  This case is before the

undersigned United States Magistrate Judge pursuant to the consent of the parties entered under

the authority of 28 U.S.C. § 636(c)(2).

For the reasons set forth below, this Court AFFIRMS the final decision of the

---

[1]  It appears that Hawk has also gone by the name of Antonio Granata.  (Doc. No. 16 at 7.)

Commissioner.

## I.  Procedural History

On September 29, 2005, and October 28, 2005, Hawk filed applications for POD, DIB, and SSI alleging a disability onset date of September 20, 2005.  His application was denied both initially and upon reconsideration.  Hawk timely requested an administrative hearing.

On January 5, 2009, an Administrative Law Judge ("ALJ") held a hearing during which Hawk, represented by counsel, testified.  Tania Shullo testified as an impartial vocational expert ("VE").  On May 18, 2009, the ALJ found Hawk was able to perform a significant number of jobs in the national economy and, therefore, was not disabled.  The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied further review.

## II.  Evidence

### Personal and Vocational Evidence

Born on October 26, 1958, and age fifty (50) at the time of his administrative hearing, Hawk is a "person closely approaching advanced age" under social security regulations.  *See* 20 C.F.R. § 404.1563(d) & 416.963(d).  Hawk has a high school diploma and attended one-year of college.  He has past relevant work experience as a heavy truck driver, forklift driver, green house foreman, and delivery driver.  (Tr. 20.)

### Medical Evidence

On April 5, 2004, Hawk was admitted to St. Elizabeth Hospital complaining of depression.  (Tr. 141-42.)  He was diagnosed as having suicidal ideation.  *Id*.  Hawk reported abusing three bags of heroin almost every day for the past thirty-plus years.  (Tr. 145.)

Upon discharge on April 9, 2004, Karipineni Prasad, M.D., diagnosed Hawk with opiate

2

withdrawal, opiate dependence, mild opiate-induced mood disorder, and antisocial personality

disorder.  (Tr. 143).  Dr. Prasad assigned Hawk a Global Assessment of Functioning (GAF)

score of 65.[2]  *Id*.  Dr. Prasad noted that, since his admission, Hawk's withdrawal symptoms

decreased and his suicidal thoughts also improved.  *Id*.  Hawk felt that he was able to cope with

the outside and requested to be discharged.  *Id*.  Dr. Prasad suggested that Hawk attend an

outpatient drug rehabilitation program, but Hawk said "it's no good."  *Id*.  Dr. Prasad noted that

since Hawk was not suicidal and had no interest in a rehab program, he was discharged.  *Id*.

   Throughout 2004 and 2005, Hawk was seen frequently by Santuccio Ricciardi, M.D., for

a variety of ailments, including hypertension, tobacco abuse, chronic pain syndrome, drug abuse,

chronic headaches, chronic obstructive pulmonary disorder (COPD), bipolar disorder, and

narcotic abuse.  (Tr. 189-256, 348-425, 442-49.)  In September of 2005, the same month Hawk

claims he became disabled, Dr. Ricciardi completed a "Physician Certification of Medication

Dependency for the Disability Assistance Program" and indicated that Hawk  was a medication

dependent person.  (Tr. 262.)  He also indicated that Hawk's ability to stand/walk and lift/carry

were affected by his impairments, and that the limitations would last for twelve months or more.

(Tr. 264.)

   On November 30, 2005, Cesar Ariza, M.D., a psychiatrist, completed a form for the

Bureau of Disability Determination ("BDD") after seeing Hawk for the first time a month earlier.

(Tr. 270.)  Dr. Ariza observed that Hawk suffered from anxiety, depression, hyperactivity,

---

[2]  A GAF score between 61 and 70 indicates some mild symptoms or some difficulty in social, occupational, or school functioning.  A person who scores in this range may have a depressed mood, mild insomnia, or occasional truancy, but is generally functioning pretty well and has some meaningful interpersonal relationships.  *See Diagnostic and Statistical Manual of Mental Disorders* 34 (American Psychiatric Association, 4th ed. revised, 2000).

chronic history of drug abuse, severe mood swings with both auditory and visual hallucinations, and paranoid delusional thinking.  (Tr. 271-72.)  Dr. Ariza also found that Hawk was "a high risk [for] relapse potential that combined with his poor coping abilities, antisocial characteristics, and chronic mood fluctuations make it severely difficult to adhere to a stable routine."  *Id*.  He opined that Hawk's "inability to cope along with his prior suicidal ideations and a mixed mood fluctuation disorder made it difficult to adequately tolerate stress in any environment."  (Tr. 272.)  Dr. Ariza diagnosed Hawk with cyclothymic bipolar disorder, "rule out" schizoaffective disorder, polysubstance dependence, personality disorder with borderline, antisocial, and dependent features, chronic depression, and hyperactivity.  *Id*.

On January 11, 2006, Cynthia Waggoner, a state agency medical consultant, reviewed the evidence of record and concluded that Hawk was capable of sustaining at least simple, repetitive tasks, and could relate superficially, make simple decisions, concentrate for two-hour periods, and sustain moderate levels of pace and persistence.  (Tr. 275.)  Joan Williams, also a state agency medical consultant, reviewed the record on May 13, 2006, and affirmed Waggoner's assessment.  (Tr. 173.)

On March 31, 2006, Dr. Ariza completed a second form for the Bureau of Disability.  (Tr. 291-93.)  He noted that Hawk had "severe anxiety and depressive symptoms, hyperactivity, chronic history of polysubstance abuse and criminal behavior (several incarcerations), mood swings, auditory and visual hallucinations.  *Id*.  Dr. Ariza opined that Hawk was "unable to cope with his inadequacies enough to suitably work for any period of time."  (Tr. 292.)

On September 5, 2006, Susan B. Coonrod, M.Ed., LICSW, of Churchill Counseling Services diagnosed Hawk with opiod dependence in sustained remission and bipolar I disorder

with the most recent episode being manic.  (Tr. 305.)  She assigned Hawk a GAF score of 65.
*Id*.

In a letter dated October 2, 2006, Dr. Ricciardi reported that he treated Hawk for a variety of medical problems, including COPD and chronic pain, but he did "not feel these are limiting factors that prohibit him from working."  (Tr. 322.)  Though Dr. Ricciardi believed that Hawk's  psychiatric condition was most probably a limiting factor, he deferred work issues and disability issues with respect to psychiatric diagnoses to Dr. Ariza.  *Id*.

Sometime after June 20, 2008, Dr. Ricciardi completed a "Basic Medical" form and indicated that Hawk's ability to stand/walk was affected and that such limitation was expected to last twelve months or more.  (Tr. 420).

Dr. Ariza continued to treat Hawk through March of 2009.  (Tr. 426-40.)

### *Hearing Testimony*

At the hearing, Hawk testified to the following:

- He has a driver's license and can drive, including long trips if he takes his medication.  (Tr. 466.)

- He last worked part-time at a pizza shop a few months prior to the hearing, but did not get along with his boss.  (Tr. 467.)

- He had problems getting angry with co-workers at the jobs he held.  He attributed this to his depression.  (Tr. 471.)

- His depression caused him to hear and see things, but it is controlled with medication.  (Tr. 471.)

- He believes his mental problems keep him from working, but he also has physical problems such as migraines (4 to 5 times a week) and stomach ailments.  (Tr. 472.)  Preventative medicine for the migraines was ineffective.  However, other medication relieves the migraines after their onset.  (Tr. 473.)  He takes Aciphex for his stomach problems, which helps.  (Tr. 474.)

- He sees his treating psychiatrist, Dr. Ariza, once a month.  He also attends therapy with Susan Conroy.  (Tr. 474-75.)

- Although the medications help him, they sometimes cause the following side effects: dry mouth, tremors, shortness of breath, fatigue, excessive sleep, euphoria, and sweating.  (Tr. 476.)

- He occasionally has problems with his memory.  (Tr. 476.)

- He can concentrate depending on the situation.  He reads newspapers and magazines, but not for long periods of time.  (Tr. 477.)

- He had a mental breakdown while in prison causing him to be hospitalized.  (Tr. 478.)

- He spent some time in rehabilitation to treat his heroin addiction.  He stopped using heroin and all illegal drugs four or five years earlier.  He still takes Methadone for his addiction.  He no longer drinks alcohol.  (Tr. 478-79, 484.)  He does not believe his mental condition has improved since he stopped using drugs.  (Tr. 480.)

- On a typical day, he feeds the squirrels outside his house, and spends time in his garden pruning roses.  He recently obtained a computer and uses it to look things up on the internet.  (Tr. 480.)

- He recently traveled to Italy to see his mother, who had not been doing well.  (Tr. 480.)  He traveled by himself and had no problems on the trip.  (Tr. 480-81.)

- He keeps his home clean and does his own chores, including cooking and cleaning, though sometimes he neglects himself for a few days if he suffers a migraine attack.  Other than gardening, he likes to jog a couple of miles.  He occasionally socializes with friends, but he can only do so for an hour at a time.  (Tr. 481-82.)

After having the VE summarize Hawk's work history, including the exertional and skill levels involved, the ALJ asked the following hypothetical question:

[W]ould you please assume that we have an individual of the claimant's age, education, the past work experience that you just described.  Would you assume that this individual is limited to medium work.  Would you assume that this individual is limited to simple, routine, repetitive tasks; and a low stress work environment, which I define as no complex decision making; very infrequent, unexpected changes in the workplace; no high volume, high fast paced

6

    productivity requirements. And that this individual is limited to jobs [with] no more than occasional interaction with the public, co-workers and supervisors.

(Tr. 486.)

The VE testified that such a person could perform Hawk's past job as an industrial truck operator. Furthermore, there were other jobs in the national economy that such a person could perform, including washer, dryer attendant, laundry worker, cleaner, sorter, and marker. (Tr. 487.) However, if the hypothetical person was also off task twenty-five percent of the time, there would be no jobs available in the national economy. *Id.*

### III. Standard for Disability

In order to establish entitlement to DIB under the Act, a claimant must be insured at the time of disability and must prove an inability to engage "in substantial gainful activity by reason of any medically determinable physical or mental impairment," or combination of impairments, that can be expected to "result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.130, 404.315 and 404.1505(a).[3]

A claimant is entitled to a POD only if: (1) he had a disability; (2) he was insured when he became disabled; and (3) he filed while he was disabled or within twelve months of the date

---

[3] The entire process entails a five-step analysis as follows: First, the claimant must not be engaged in "substantial gainful activity." Second, the claimant must suffer from a "severe impairment." A "severe impairment" is one which "significantly limits ... physical or mental ability to do basic work activities." Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets a required listing under 20 C.F.R. § 404, Subpt. P, App. 1, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d)(2000). Fourth, if the claimant's impairment does not prevent the performance of past relevant work, the claimant is not disabled. For the fifth and final step, even though the claimant's impairment does prevent performance of past relevant work, if other work exists in the national economy that can performed, the claimant is not disabled. *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

the disability ended.  42 U.S.C. § 416(i)(2)(E); 20 C.F.R. § 404.320.

Hawk was insured on his alleged disability onset date, September 20, 2005, and remained insured through the date of the ALJ's decision.  (Tr. 13.)  Therefore, in order to be entitled to POD and DIB, Hawk must establish a continuous twelve month period of disability commencing between September 20, 2005 and May 18, 2009.  Any discontinuity in the twelve month period precludes an entitlement to benefits.  *See Mullis v. Bowen,* 861 F.2d 991, 994 (6th Cir. 1988); *Henry v. Gardner*, 381 F. 2d 191, 195 (6th Cir. 1967).

A claimant may also be entitled to receive SSI benefits when he establishes disability within the meaning of the Act.  20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524 (6th Cir. 1981).  To receive SSI benefits, a claimant must also meet certain income and resource limitations.  20 C.F.R. §§ 416.1100 and 416.1201.

### IV.  Summary of Commissioner's Decision

The ALJ found Hawk established medically determinable, severe impairments due to disorders of the back, history of headaches, chronic obstructive pulmonary disease ("COPD"), chronic depression, an anxiety disorder, a personality disorder, and a history of substance abuse. (Tr. 15.)  However, his impairments, either singularly or in combination, did not meet or equal one listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1.  (Tr. 16-20.)  Hawk was found incapable of performing his past work activities, and was determined to have a Residual Functional Capacity ("RFC") for a limited range of medium work.[4]  The ALJ then used the Medical Vocational

---

[4]  The ALJ expressly found that Hawk could not perform any of his past relevant work despite the VE's testimony that the hypothetical individual could perform Hawk's past relevant work as an industrial truck operator.  (Tr. 24, 487.)  This apparent inconsistency, however, is favorable to Hawk, as it required the ALJ to proceed to Step Five where the burden shifts to the Commissioner to demonstrate that there are a significant number of jobs in the national

Guidelines ("the grid") as a framework and VE testimony to determine that Hawk is not disabled.

## V.  Standard of Review

This Court's review is limited to determining whether there is substantial evidence in the record to support the ALJ's findings of fact and whether the correct legal standards were applied. *See Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) ("decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision."); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983).  Substantial evidence has been defined as "[e]vidence which a reasoning mind would accept as sufficient to support a particular conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966); *see also Richardson v. Perales*, 402 U.S. 389 (1971).

The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion.  *Buxton v. Halter*, 246 F.3d 762, 772-3 (6th Cir. 2001) (*citing Mullen*, 800 F.2d 535, 545 (6th Cir. 1986)); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999)("Even if the evidence could also

---

economy that a person with Hawk's limitations could perform.  *See, e.g., Young v. Califano*, 633 F.2d 469, 470 (6th Cir. 1980) ("When an applicant for disability benefits establishes his inability to return to his former occupation, the burden shifts to the Secretary to show that the plaintiff retains residual capabilities which would permit him to engage in other substantial gainful employment."); *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990) (a claimant establishes a *prima facie* case of disability by showing that he has a medical basis for an impairment that prevents him from engaging in his particular occupation, at which point it becomes the Secretary's burden to establish the claimant's ability to work); *Workman v. Comm'r of Soc. Sec.*, 105 Fed. Appx. 794 (6th Cir. 2004).

support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached.  *See Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997).")  This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.  *Mullen*, 800 F.2d at 545 (*citing Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

## VI.  Analysis

Hawk's Brief on the Merits, submitted *pro se*, does not clearly set forth cognizable assignments of error.  However, it is well settled that "inartfully pleaded allegations in a *pro se* complaint are held to less stringent standards than formal pleadings drafted by lawyers." *Franklin v. Rose*, 765 F.2d 82, 84-85 (6th Cir. 1985) (internal quotation marks omitted) (*citing Haines v. Kerner*, 404 U.S. 519, 520 (1972)).  Further, allegations in *pro se* pleadings are entitled to "liberal construction" which sometimes requires "active interpretation ... to encompass any allegation stating federal relief."[5]  *Id.*  As such, the Court construes Hawk's brief as raising the following assignments of error: (1) the ALJ erred by failing to call a medical expert ("ME") or order an evaluation from an independent medical examiner; (2) the ALJ erred by failing to address the mental functional capacity assessment offered by his treating psychiatrist; and, (3) ineffective assistance of counsel.

---

[5]  Hawk's filings contain lengthy accusations of negligence, ethical misconduct, fraud, conspiracy, *et cetera* against the Commissioner, the ALJ, the Social Security Administration personnel, and even his own counsel.  These allegations do not appear to have any factual basis other than Hawk's subjective belief that the only plausible explanation for the denial of his application is malfeasance.  In the interests of justice and fairness, the Court has attempted to glean cognizable issues for review from Hawk's filings.

***Independent Medical Examination***

Hawk appears to allege that the ALJ erred by failing to call an ME or order a consultative examination by an independent medical examiner.  In his Brief on the Merits, Hawk alleges that the ALJ failed to apply "correct legal standards, by the refusal to have the issue affirmed by an independent medical examiner reference ... [because] there are lawfull [sic] regulation to promptly verify it through independent medical examiners."[6]  (Doc. No. 16 at 1, 2.)

It is within the ALJ's discretion "to determine whether further evidence, such as additional testing or expert testimony, is necessary."  *Foster v. Halter*, 279 F.3d 348, 355 (6th Cir. 2001) *citing* 20 C.F.R. §§ 404.1517, 416.917 ("If your medical sources cannot or will not give us sufficient medical evidence about your impairment for us to determine whether you are disabled or blind, we ***may*** ask you to have one or more physical or mental examinations or tests.") (emphasis added); *see also Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 214 (6th Cir. 1986) ("The regulations do not require an ALJ to refer a claimant to a consultative specialist, but simply grant him the authority to do so if the existing medical sources do not contain sufficient evidence to make a determination.").

As such, the ALJ did not commit error by declining to order a consultative examination or to solicit the testimony of an ME.

_____

[6]  Hawk also seems to believe that it is improper for an ALJ "to doubt the credibility of [his] health status."  (Doc. No. 16 at 2.)  "It is well-established that resolving conflicts in the evidence and deciding questions of credibility are matters within the province of the ALJ." *Bishop v. Astrue*, 2009 U.S. Dist. LEXIS 118278, 4-5 (W.D. Ky. Dec. 18, 2009); Social Security Ruling ("SSR") 96-7p.

*Treating Psychiatrist*

Hawk argues that the ALJ erred by failing to address the mental functional capacity assessment offered by his treating psychiatrist, Dr. Ariza.  In his brief, Hawk states that the ALJ "purposely omitted in the M.F.C.A. mental functional capacity assessment of Dr. Ariza, as a class action of a reminder."  (Doc. No. 16 at 3.)  Hawk refers to an undated assessment by Dr. Ariza he attached to his brief as Exhibit A-64.[7]  (Doc. No. 16-1 at 64-65.)   After a review of the transcript filed with this Court, it appears that the document referenced by Hawk is not part of the record that was before the ALJ.

The ALJ cannot reasonably be expected to consider sources that he has not seen.  In the Sixth Circuit, it is well established that Hawk as the plaintiff – and not the ALJ – has the burden to produce evidence in support of a disability claim.  *See, e.g., Wilson v. Comm'r of Soc. Sec.*, 280 Fed. Appx. 456, 459 (6th Cir. May 29, 2008) (*citing* 20 C.F.R. § 404.15129(a)).  *See also Struthers v. Comm'r of Soc. Sec.*, 101 F.3d 104 (table), 1999 WL 357818 at *2 (6th Cir. May 26, 1999) ("[I]t is the duty of the claimant, rather than the administrative law judge, to develop the record to the extent of providing evidence of mental impairment."); *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 214 (6th Cir. 1986) ("The burden of providing a complete record, defined as evidence complete and detailed enough to enable the Secretary to make a disability determination, rests with the claimant.  20 C.F.R. §§ 416.912, 416.913(d)."); *cf. Wright-Hines v. Comm'r of Soc. Sec.*, 597 F.3d 392, 396 (6th Cir. 2010) (although an "ALJ has an inquisitorial duty to seek clarification on material facts," a plaintiff, who is represented by counsel, must

---

[7]  The assessment indicates that Hawk was last examined on February 6, 2006.  It is unclear precisely when this assessment was rendered, though it is reasonable to assume it was completed prior to March 6, 2006, as Dr. Ariza saw Hawk on that date.  (Tr. 291.)

provide a "factual record" relating to the length of his employment when his past work was part of the record and was the basis of the initial decision to deny benefits).  However, there is a special, heightened duty requiring the ALJ to develop the record when the plaintiff is "(1) without counsel, (2) incapable of presenting an effective case, and (3) unfamiliar with hearing procedures." *Wilson*, 280 Fed. Appx. at 459 (*citing Lashley v. Sec'y of Health & Human Servs.*, 708 F.2d 1048, 1051-52 (6th Cir. 1983)).

The special duty requirement is not at issue in this case since Hawk was represented by an attorney.  Thus, "the ultimate burden of proving disability" remained squarely on Hawk.  *See Wilson*, 280 Fed. Appx. at 459 (*citing Trandafir v. Comm'r of Soc. Sec.*, 58 Fed. Appx. 113, 115 (6th Cir. Jan. 31, 2003)); *see also Guy v. Astrue*, 2010 WL 1141526 at **10-11 (M.D. Tenn. Mar. 4, 2010).

Furthermore, though the ALJ may not have considered the assessment that was completed by Dr. Ariza soon after a February 6, 2006 examination as it was not part of the record, failure to do so was harmless given that the ALJ specifically considered Dr. Ariza's other treatment notes.  (Tr. 21-22.)  First, the ALJ expressly considered Dr. Ariza's evaluation of March 31, 2006, which was both proximate in time and similar in its findings to the omitted assessment.  *Id.*  Second, after evaluating Dr. Ariza's entire course of treatment through 2009, the ALJ found that Hawk's socialization was improving with treatment.  *Id.*  This finding is not unreasonable given that Dr. Ariza's notes repeatedly suggest that Hawk was calm, pleasant, comfortable, active, and in a good mood.  (Tr. 428-40.)  Even Hawk testified that his mental problems had improved and were better controlled with medication.  (Tr. 471, 475-76.)

Because the ALJ did not err by failing to consider an assessment that was not made part

13

of the record and, which even if considered, would not have altered the ALJ's decision, Hawk's assignment of error is without merit.

Subsequent to the close of briefing and without leave of Court, Hawk filed an "Evidence Memorandum" on October 21, 2010 – over three months after the Commissioner filed his Brief on the Merits. (Doc. No. 38.) The exhibits attached to Hawk's Evidence Memorandum contain various medical records, mostly dating back to 2004 and 2005 – years prior to the ALJ's decision. Some records, however, indicate that he continues to see Dr. Ariza and takes medication for his impairments. Hawk is clearly upset and disturbed with the denial of benefits, and continues to make a myriad of accusations against both the Social Security Administration and his own attorney.

This Court cannot conduct a *de novo* review or invalidate the ALJ's decision based on new evidence that was not part of the record. However, sentence six of 42 U.S.C. § 405(g) allows a court to remand for consideration of new evidence that was not previously before the agency, "but only upon a showing that there is new evidence which is material and that there is ***good cause for failure to incorporate such evidence into the record in a prior proceeding***." *Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007) (emphasis added). Hawk has failed to demonstrate good cause or drawn this Court's attention to any obstacles that prevented him from submitting evidence that predates February 5, 2009 – thirty days after the hearing which is the day the ALJ closed the record. Medical evidence that post-dates the ALJ's decision also fails to satisfy the good cause requirement. *See, e.g., Merida v. Astrue*, 2010 U.S. Dist. LEXIS 91500 (E.D. Ky. Aug. 30, 2010) (noting that the Sixth Circuit "takes a hard line on the good cause test" and that medical reports post-dating the Commissioner's final decision do not demonstrate good

14

cause) (*quoting Oliver v. Sec'y of Health & Human Servs.*, 804 F.2d 964, 966 (6th Cir. 1986). If

Hawk feels his condition has deteriorated and that he is disabled, he "retains the right to submit a

new application for benefits based upon the newly-obtained evidence of claimed disability." *Id.*

(*citing Sizemore v. Sec'y of Health & Human Servs.*, 865 F.2d 709, 712 (6th Cir. 1988)).

***Ineffective Counsel***

Hawk argues that his counsel was ineffective in his representation.  Specifically, Hawk

has stated that his "drop out inefficient counsel failed to raise issues vital to the immediate

granting of my so needed benefits ... [p]roved by the fact that came to my hearing with no

updated records."  (Doc. No. 16 at 5-6.)

First, while the mental capacity assessment of Dr. Ariza discussed above, completed

sometime after February of 2006, was not part of the record, there is no evidence that this

omission was caused by counsel.  Furthermore, at the hearing, counsel specifically requested that

the ALJ keep the record open in order for the file to be updated with medical records from Dr.

Ariza's office.  The last treatment note at the time of the hearing was dated October of 2006.

(Tr. 463, 488.)  The ALJ kept the record open for thirty days.  The final record does contain Dr.

Ariza's treatment notes dated from August of 2006 until March of 2009.  (Tr. 426-40, 463.)

Therefore, the record was indeed supplemented after the hearing.

Moreover, federal courts have rejected arguments by other social security claimants who

allege ineffectiveness or malpractice by their counsel in the representation of a claimant.

> Finally, [the claimant] also accuses [counsel] of "gross negligence and
> "malpractice" for failing to submit certain records of his disability to the ALJ and
> for failing to appeal.  (Pl.'s Objs. 1, 2.)  These claims are not cognizable on
> review of the Commissioner's decision because "there is no principle of effective
> assistance of counsel in civil cases." *Slavin v. Commissioner*, 932 F.2d 598, 601
> (7th Cir. 1991); *see also Cornett v. Astrue*, 261 F. App'x 644, 651 (5th Cir. 2008)

> (rejecting a social security claimant's ineffective assistance of counsel claim and
> noting that "[t]he Supreme Court has never recognized a constitutional right to
> counsel in Social Security proceedings").  A social security claimant who was
> represented by counsel of his own choosing cannot at a later time complain that
> the representation was inadequate.  *See Hettinger v. Richardson*, 365 F. Supp.
> 1245, 1246 (E.D. Pa. 1973); *Russell ex rel. Russell v. Chater*, 62 F.3d 1421, at *2
> [published in full-text format at 1995 U.S. App. LEXIS 21609] (8th Cir. 1995)
> (unpublished table decision) (holding the social security claimant's argument
> regarding the ineffective assistance of her retained counsel "not cognizable in this
> type of action").

*Nelson v. Astrue*, 2008 U.S. Dist. LEXIS 66907, 20-21 (E.D. Pa. Aug. 29, 2008); *see also*

*Nicholson v. Rushen*, 767 F.2d 1426, 1427 (9th Cir. 1985) (a plaintiff in a civil case has no right

to effective assistance of counsel).

Though this Court finds no evidence of ineffectiveness by counsel, Hawk's argument is

unavailing as such a claim is not cognizable in a social security disability appeal.

### VII.  Decision

For the foregoing reasons, the Court finds the decision of the Commissioner supported by

substantial evidence.  Accordingly, the decision of the Commissioner is AFFIRMED and

judgment is entered in favor of the defendant.

IT IS SO ORDERED.

s/ Greg White
U.S. Magistrate Judge

Date: October 25, 2010